NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | : | |
|---|---|---|
| Kristine M. GARCIA & | : | Civil No. 16-456 (RBK) |
| Anna S. GARCIA, | : | |
| | : | **Opinion** |
| Appellants, | : | |
| | : | |
| v. | : | |
| | : | |
| THE BRYN MAWR TRUST COMPANY, | : | |
| | : | |
| Appellee. | : | |
| | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the appeal of Kristine M. Garcia and Anna S. Garcia ("Garcias" or "Appellants"). The Garcias appeal the Bankruptcy Court's Order granting summary judgment in favor of the Bryn Mawr Trust Company ("BMTC" or "Appellees") and denying additional discovery. For the reasons expressed below, the Order of the Bankruptcy Court is **AFFIRMED**.

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Kristine M. and Anna S. Garcia jointly purchased a home in Sicklerville, New Jersey in November 2007. Appellants' Br. 3. To finance the purchase, the Garcias and their father Rufino Garcia ("Mr. Garcia") applied for mortgages from several banks, including First Keystone Bank ("FKB"). Appellants' Br. 4. FKB's headquarters were located in Media, Pennsylvania, and it did not have any offices, telephone numbers, or employees in New Jersey ("the State"). *Id.*; Appellants' App. A53, ¶ 7. Further, FKB did not directly advertise, solicit, or employ brokers in

1

New Jersey to generate business. Appellants' App. A54, ¶ 6. In 2010, BMTC, another Pennsylvania Bank, merged with FKB. Appellants' Br. 4.

Mr. Garcia directly contacted FKB to obtain a loan and requested FKB send him a loan application to New Jersey. *Id.* at 4–5. The application was submitted to, analyzed, and considered in Pennsylvania. Appellants' App. A55, ¶ 8. FKB hired a New Jersey appraiser and, after approving the application in Pennsylvania, contacted the Garcias in New Jersey to inform them of the approval. Appellants' Br. 5. Mr. Garcia executed a loan for $417,000 on his daughters' behalf and executed a mortgage against the Garcias' home in favor of FKB. Appellants' Br. 6. The closing for the loan took place in New Jersey, and the loan documents designated the state where the property was located, New Jersey, as the governing law. *Id.*

Beginning mid-2012, the Garcias stopped making timely payments, and FKB initiated foreclosure proceedings on the house. *Id.* In May and July of 2015, the Garcias respectively filed for bankruptcy protection in New Jersey under Chapter 7 of the Bankruptcy Code. *Id.* BMTC moved to vacate the automatic stay issued under 11 U.S.C. § 362 and proceed with foreclosure. *Id.* The Garcias opposed the motion on the grounds that FKB and BMTC had violated the Banking Act of 1948 by transacting business in New Jersey without a New Jersey banking license. *Id.* The Bankruptcy Court ordered the Garcias to raise this issue by filing an adversary proceeding against BMTC. *Id.* at 7.

On July 28, 2015, the Garcias filed a Complaint against BMTC arguing that the loans issued by FKB were invalid under the Banking Act, N.J. Stat. Ann. § 17:9A-316. *Id.* On August 24, 2015, BMTC filed an Answer asserting that BMTC qualified for exemptions that permit a foreign bank to enforce a mortgage for property in New Jersey in the transaction of business outside of the State, N.J. Stat. Ann. § 17:9A-331(3)–(4). *Id.* On September 4, 2015, BMTC filed

2

a Motion for Judgment on the Pleadings. *Id.* The Garcias opposed the Motion and requested discovery. *Id.* at 8. On November 2, 2015, the Bankruptcy Court permitted the Garcias 45 days to conduct limited discovery, and the Garcias proceeded to proupound interrogatories and document requests. *Id.* On December 22, 2015, the Garcias filed Supplemental Pleadings, in which they asserted that BMTC improperly refused to provide a list of BMTC employees with information on the loans at issue and a list of other loans FKB or BMTC have issued in New Jersey. *Id.* at 9. On January 12, 2016, the Bankruptcy Court held oral arguments, during which the court *sua sponte* converted BMTC's Motion for Judgment on the Pleadings to a Motion for Summary Judgment. *Id.* at 10. The Bankruptcy Court granted summary judgment in favor of BMTC and denied the Garcias' request for additional discovery. *Id.*

On January 27, 2016, the Garcias filed a timely Notice of Appeal to this Court (Doc. No. 1). On February 25, 2016, BMTC filed a Motion to Quash arguing that the Garcias made false statements in their Statement of Issues and thus failed to preserve any issues for appeal (Doc. No. 4). In March and April 2016, the Garcias and BMTC filed respective briefs arguing the merits of the Garcias' appeal (Docs. No. 12–14). In light of the parties' full briefing of the appeal, the Court denied the Motion to Quash on August 9, 2016 (Doc. No. 15).

## II. DISCUSSION

### A. Standard of Review

The Garcias challenge the Bankruptcy Court's decision granting summary judgment in favor of BMTC and dismissing the case. This Court has appellate jurisdiction over a final order of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a).

A district court's review of a grant of summary judgment is *de novo*, "[b]ecause summary judgment is only appropriate where there is no issue of material fact and judgment is appropriate

as a matter of law." *Rosen v. Bezner*, 996 F.2d 1527, 1530 (3d Cir. 1993). Any factual findings made in a grant of summary judgment are treated as conclusions as a matter of law that no dispute of material fact exists, and thus are also subject to plenary review. *Id.* at 1530 n.2. A decision regarding the scope or opportunity for discovery is reviewed for an abuse of discretion. *In re Kiwi Int'l Air Lines, Inc.*, 344 F.3d 311, 323 (3d Cir. 2003).

### B. Summary Judgment

The Banking Act of 1948 ("the Act") prohibits a foreign bank organized under the laws of another state from transacting any business in New Jersey. N.J. Stat. Ann. § 17:9A-316(B). There are several exemptions to this general prohibition. A foreign bank is not precluded from:

> (3) enforcing in this State obligations heretofore or hereafter acquired by it in the transaction of business outside of this State, or in the transaction of any business authorized by paragraph (1) or (2) of this section;
>
> (4) acquiring, holding, leasing, mortgaging, contracting with respect to, or otherwise protecting or conveying property in this State heretofore or hereafter assigned, transferred, mortgaged or conveyed to it as security for, or in whole or part satisfaction of a loan or loans made by it or obligations acquired by it in the transaction of business outside of this State, or in the transaction of any business authorized by paragraphs (1) or (2) of this section.

*Id.* § 17:9A-331(3)–(4). A bank cannot bring a claim arising from any transaction of business that violates the Act. *Id.* § 17:9A-330.

The Garcias appeal the Bankruptcy Court's determination that BMTC transacted business outside of New Jersey as a matter of law and thus falls into the exemptions of § 17:9A-331(3)–(4). New Jersey courts have not definitively addressed how to determine whether a transaction occurred outside or inside the State. A recent unpublished, per curiam decision of the Superior Court of New Jersey, Appellate Division adopted a totality of the circumstances test: "The

4

examination must determine whether the conduct in New Jersey was essential to the interstate transaction" and the location where "the totality of the circumstances show the most pivotal portions of the loan process occurred." *First Sav. Bank of Perkasie v. Asia Int'l Malls, Inc.*, No. A-3881-12T4, 2015 WL 4742873 (N.J. Super. Ct. App. Div. Aug. 12, 2015).

The Garcias challenge the *Perkasie* test as incorrect in light of *Am. Bank & Trust Co. of Pennsylvania v. Lott*, 490 A.2d 308 (N.J. 1985). The Garcias contend that *Lott* required all of the activities surrounding a loan to occur outside of the State in order to qualify for the exemptions. *Id.* at 310. They rely on the court's excerpt of an Attorney General Opinion that states: "where all of the activities surrounding the loan occur exclusively in the foreign jurisdiction, there would appear to be no legal impediment to a foreign bank making loans to New Jersey residents on the security of residential property located in the State." *Id.* However, the court never wholesale adopts the Attorney General's Opinion and merely interprets the Opinion to state that, in the court's words, "New Jersey permits a foreign bank to foreclose a mortgage on New Jersey property." *Id.* Regardless, the Opinion nevertheless fails to support the Garcias' stricter reading of the exemptions, as it states that a business exclusively transacted outside New Jersey is sufficient to meet the Act's exemptions, not required. *Lotts* at most is neutral to the test formulated in *Perkasie*; it certainly does not invalidate it.

Instead of *Perkasie*, the Garcias argue, *Allenberg Cotton Co. v. Pittman*, 419 U.S. 20 (1974), supplies the appropriate test. In *Allenberg*, the Supreme Court determined whether a state statute unreasonably burdened interstate commerce based on whether the law regulated activities that were interstate or localized. *Id.* at 31. A foreign corporation that enters a state to conduct a unitary transaction is not transacting business of an intrastate character. *Id.* at 32–33. The Garcias' reliance on this holding, however, is misplaced. The Commerce Clause sets the ceiling

5

for what activities a state can regulate. Thus, *Allenberg* merely clarifies what banking activities New Jersey cannot regulate pursuant to the Commerce Clause, namely, unitary interstate transactions. *See Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 173 (3d Cir. 1993) (applying *Allenberg* to determine whether the Banking Act burdened interstate commerce, not the scope of the Act's exemptions). It does not necessitate that the State permit, bar, or otherwise regulate banking activities that are actually localized.

With *Perkasie* as the only guidance on the transactions exempted by N.J. Stat. Ann. § 17:9A-331(3)–(4), the Court will apply the test therein enunciated. *See Euster v. Eagle Downs Racing Ass'n*, 677 F.2d 992, 994 (3d Cir. 1982) ("[T]he highest court of a state is the ultimate interpreter of the state's statutes and that a federal court is bound by its construction."). To determine the state where the most pivotal portions of the loan occurred, the *Perkasie* court examined whether the bank advertised, solicited, or employed brokers in New Jersey; had offices, a telephone number, or employees in New Jersey; where the loan application was submitted, analyzed, considered, and approved; where the commitment letter was drafted; the state license of the lendee's attorney; the state license of the appraiser; and whether the loan was governed by New Jersey law. 2015 WL 4742873, at *5. Here, it is undisputed that Mr. Garcia reached out to FKB; FKB did not have any offices, telephone numbers, or employees in New Jersey; and the loan application was submitted, analyzed, considered, and approved in Pennsylvania. While the Garcias point out that a New Jersey appraiser evaluated the property and the loan agreement selected New Jersey law, the majority of the factors suggest the transaction occurred outside of New Jersey. Moreover, it is of no consequence that the closing took place in New Jersey. The *Perkasie* court specifically cautioned that "[t]he location of the closing in New Jersey does not recast the transaction as one undertaken in New Jersey." *Id.* at *6.

The Garcias also spend much time expounding upon FKB's and BMTC's other lending activities in New Jersey, alleging that they have issued more than one hundred loans in one of the State's counties and that BMTC is involved in other foreclosure proceedings in the State. Appellants' Br. 22–23; Appellants' Reply Br. 6–7. While the Garcias correctly note that such facts are relevant to a Commerce Clause analysis under *Allenberg*, those facts do not bear on whether a transaction is considered outside of the State for the purposes of the Banking Act. *Lott* interpreted the Banking Act to "not prohibit a foreign bank from enforcing obligations in New Jersey that are 'acquired by it in the transaction of business outside of this State.'" *Lott*, 490 A.2d at 310 (quoting N.J. Stat. Ann. § 17:9A-331). The exemptions thus turn on the character of the obligation, not the bank's activities at large. In conclusion, the Garcias are unable to distinguish their loans from the one in *Perkasie*. The Court accordingly holds that summary judgment was correctly granted in favor of BMTC and affirms the Bankruptcy Court's order.

### C. Discovery

The Garcias also argue that the Bankruptcy Court committed an abuse of discretion in limiting discovery to 45 days and denying their subsequent requests for additional discovery regarding the FKB officers involved in issuing their loans and other loans issued in New Jersey by FKB and BMTC. The Court disagrees. The Garcias argue that they seek the list of FKB officers to determine whether the officer who attended the closing falls into N.J. Admin. Code § 3:4-4.4 such that FKB and BMTC conducted business under the Banking Act. However, this issue is irrelevant because the Garcias' loan qualifies for the exemptions to the general prohibition on conducting business. The other loans issued by FKB and BMTC in New Jersey are also irrelevant to establishing whether this loan was transacted inside the State, as discussed

above. Therefore, the Court finds no abuse of discretion in the Bankruptcy Court's denial of further discovery.

## III. CONCLUSION

In light of the foregoing reasons, the Bankruptcy Court's Order is **AFFIRMED**.


Dated:   12/8/2016                                             s/ Robert B. Kugler

                                                                 ROBERT B. KUGLER

                                                                  United State District Judge